# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JUSTIN BURRISS, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) | |
| ) | Case No. 3:21-cv-00201 |
| vs. ) | |
| ) | District Judge Eli Richardson |
| BFI WASTE SYSTEMS OF TENNESSEE, ) | Magistrate Judge Barbara Holmes |
| LLC., d/b/a "MIDDLE POINT LANDFILL" ) | |
| ) | CLASS ACTION COMPLAINT |
| Defendant. ) | |

## SETTLEMENT AND RELEASE AGREEMENT

IT IS AGREED by and among Justin Burriss ("Plaintiff"), and all others similarly situated, in their individual and class representative capacity (collectively, "Plaintiffs"), and BFI Waste Systems of Tennessee, LLC, d/b/a "Middle Point Landfill" ("BFI" or "Defendant"), that the above-captioned lawsuit is settled on the terms set forth below in this Settlement and Release Agreement (this "Agreement"), subject to the approval of the Court. Plaintiffs and Defendant are sometimes collectively referred to as "the Parties".

1. **Background**

1.1 On March 11, 2021, Plaintiff, individually and on behalf of "all others similarly situated", filed a Complaint, being Case No. 3:21-cv-00201, alleging damages arising from Defendant's maintaining and operating a facility located at 750 E. Jefferson Pike in Murfreesboro, Tennessee, commonly known as the Middle Point Landfill ("the Action"). The Action alleges, among other things, that "Plaintiff's property . . . ha[s] been and continue[s] to be, physically invaded by noxious odors emitted from Defendant's landfill." The Action further alleges that the "invasion of Plaintiffs' property… has caused Plaintiff, and the Class he represents, substantial harm" and "interfere[s] with the use of their property." Plaintiffs also claim such invasion resulted in "diminished property values."

1.2    The Action asserts claims for nuisance, negligence, gross negligence and trespass, seeking compensatory and punitive damages. The Action is brought as a putative class action on behalf of Plaintiff and "all others similarly situated." Plaintiff's proposed class included "[a]ny and all individuals who owned or occupied residential property within 3 miles of Defendant's property boundary." Defendant filed its Answer and Affirmative and/or Further Defenses denying any liability. Defendant denies the appropriateness of class certification, but has stipulated to a class for Settlement of this lawsuit, under the unique facts of this Agreement.

1.3    In evaluating the terms of this Agreement, Plaintiffs and Plaintiffs' counsel ("Class Counsel") have considered: (a) the consideration agreed to be paid, as set forth below; (b) the substantial benefits that would inure to the Class, including those derived from the Odor Control Measures; (c) the attendant risks of litigation and the uncertainty of the outcome of the Action; (d) the desirability of permitting the Settlement to be consummated as provided by the terms of this Agreement; (e) whether the terms and conditions of this Agreement are fair, reasonable and adequate; and (f) whether it is in the best interests of the members of the Class to settle the Action as set forth in this Agreement.

1.4    The Parties agreed to engage an independent third party, Timothy Gallagher, to conduct a mediation regarding Settlement possibilities. Mr. Gallagher conducted extensive negotiations on July 27, 2021. As a result of such negotiations, the Parties have now agreed to terms upon which the Action will be settled.

1.5    Plaintiff, individually and on behalf of the Class Members, voluntarily and with full knowledge of his rights and duties if appointed to represent the Class, and in the provisions of this Agreement and having the benefit and advice of Class Counsel, now desires to settle, compromise, and dispose of the Action and all claims he and the Class Members have or might have against Defendant arising from its operation of Middle Point Landfill, and to dismiss the Action with prejudice and to settle with and release Defendant upon the terms and conditions set forth below.

## 2. No Admission of Liability or Wrongdoing

2.1    Defendant expressly denies any wrongdoing alleged in the Action, in the Complaint, or in other papers filed in the Action, and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims, which have been or could have been alleged against it in the Action. Defendant further contests the appropriateness of class certification other than under the limited and unique facts outlined in this Agreement, and enters into this Agreement for the sole purpose of resolving the disputed claims limited to this Action.  Nothing in this Agreement has any application to any other landfill operations of Defendant (or its affiliates, parent compan(ies), successors, assigns or the like), or any other class actions in which Defendant may be a party, and Defendant believes and asserts that any other case is unique, based upon the individual facts, law and circumstances for that case.

2.2    The Parties agree that nothing contained in this Agreement shall be construed as an admission by Defendant as to the merit or lack of merit of any particular claim or defense, including the appropriateness of class certification in this or any other action, as set forth in paragraph 2.1.

2.3    Defendant, nevertheless, considers it desirable for the Action to be settled and dismissed because this Agreement will: (i) allow Defendant to avoid further litigation expense and disruption of the management and operation of its business due to the pendency and defense of the Action; (ii) put Plaintiffs' claims and the underlying matters to rest; and (iii) avoid the substantial expense, burdens, and uncertainties associated with any possible finding of liability and damages for Plaintiff and the Class on the claims raised in the Action.

## 3. Plaintiffs' Litigation Efforts

3.1    Before and after commencing the Action and during Settlement negotiations, Class Counsel conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of Plaintiffs' claims and potential claims and to determine how best to serve the interests of Plaintiff and the Class. The course of this examination allowed Plaintiffs' counsel to

verify that the terms of this Agreement are fair, reasonable and adequate, particularly in light of the risks and uncertainties of litigation and the cost-savings involved with early Settlement.

### 4. **The Settlement**

4.1 Based upon their exchange of information and documents necessary to evaluate Settlement prospects, and evaluation of the facts and law relating to the matters alleged in the Action, Plaintiff, Class Counsel, and the Class have agreed to settle the Action, pursuant to the terms of this Agreement, after considering such factors as: (i) the substantial benefits to Plaintiff and the Class under the terms of this Agreement; (ii) the uncertainty of being able to prove the allegations in the Action; (iii) the uncertainty of being able to overcome Defendant's defenses thereto, including, but not limited to, defenses based on: statutes of limitations; lack of damages; full use and enjoyment of the neighborhood; failure to meet class certification standards; laches; causation; waiver; the alleged conduct being in compliance with applicable state environmental laws; and Defendant acting in good faith; (iv) the attendant risks of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; (v) the difficulty of certifying a class; and (vi) the desirability of consummating this Agreement promptly, in order to provide effective relief to Plaintiff and the Class without delay.

4.2 The Parties believe it is appropriate for the Court to certify the Class for Settlement purposes only, based upon the unique and specific terms outlined in this Agreement.

4.3 If the Court does not approve this Agreement and enter a Final Approval Order and Judgment, however, Defendant expressly retains: (i) all rights to object to the maintenance of the Action as a class action; (ii) all litigation rights available to litigants under the Federal Rules of Civil Procedure; (iii) all defenses in the Action and to the Complaint; and (iv) all rights to continue opposing class certification.

### 5. **Definitions**

5.1 As used in this Agreement and the attached exhibits (which are an integral part of this Agreement and are incorporated in their entirety by this reference), the following terms have the following meanings, unless a part or subpart of this Agreement or its exhibits provides otherwise:

(a)     "**Action**" means the entire lawsuit styled between *Justin Burriss, on behalf of himself and all others similarly situated v. BFI Waste Systems of Tennessee, LLC, d/b/a "Middle Point Landfill"*, Case No. 3:21-cv-00201, pending in the United States District Court for the Middle District of Tennessee, including pleadings, briefs, motions and discovery materials.

(b)     "**Administrator**" means Class Counsel or any third-party agent whom the Parties may retain to help implement the terms of the Agreement.

(c)     "**Agreement**" means this Settlement and Release Agreement, which includes the terms upon which the Action is settled.

(d)     "**Claim Form**" means the claim form which Class Members may complete which is described in Section 12 of this Agreement, in a form similar to Exhibit D attached to this Agreement.

(e)     "**Class**," "**Settlement Class**," "**Class Member**," and "**Class Members**" shall mean as follows:  all persons who have owned or occupied any real property located in whole or in part within three miles of any part of Middle Point Landfill located at 750 E. Jefferson Pike in Murfreesboro, Tennessee ("Middle Point Landfill"), at any time since March 11, 2018, and who do not affirmatively Opt-Out of this Settlement.

(f)     "**Class Counsel**" means Steven D. Liddle, Nicholas A. Coulson, and Albert J. Asciutto and the law firm of Liddle Sheets Coulson P.C.

(g)     "**Class Notice**" means the notice to be provided to Class Members pursuant to Section 7 of this Agreement, in a form similar to Exhibit B attached to this Agreement.

(h)     "**Complaint**" means Plaintiff's Class Action Complaint and Jury Demand filed in this Action.

(i)     "**Cooling Off Period**" means that all members of the Settlement Class shall covenant not to sue Defendant on any alleged claims for odor, dust or other alleged emissions that occurred after the Final Settlement Approval for a period of thirty months after Final Settlement Approval. Any claims that accrue during this time may be brought after the Cooling Off Period.

(j)     **"Costs of Administration"** means all expenses incurred in connection with the administration of the Settlement of the Action, including all fees and expenses of the Administrator, if any.

(k)     **"Court"** means the United States District Court for the Middle District of Tennessee.

(l)     **"Defendant"** means BFI Waste Systems of Tennessee, LLC, d/b/a "Middle Point Landfill."

(m)     **"Defendant's Counsel"** means William G. Beck, Allyson E. Cunningham, and Kayla A. Brewe, and the law firm of Lathrop GPM LLP; and Wells Trompeter, and the law firm of Waller Lansden Dortch & Davis, LLP.

(n)     **"Escrow Account"** means the escrow account established by Class Counsel, acting as escrow agent, at the financial institution of Class Counsel's selection which shall be, unless otherwise decided, designated the "Middle Point Landfill Settlement Account," at the PNC Bank, Buhl Building Branch, Detroit, Michigan 48226. The foregoing account shall serve as a depository for the Settlement Funds, less such amounts as shall be withdrawn therefrom pursuant to this Agreement or Order of the Court only, together with any interest that has accrued thereon. No payments from the Settlement Funds may be made unless Class Counsel endorses the payment check(s), unless otherwise agreed. Any interest accrued on the Settlement Funds shall be part of the Settlement Funds for the benefit of the Class.

(o)     **"Fairness Hearing"** means the hearing(s) at or after which the Court will make a final decision whether to approve this Agreement as fair, reasonable, and adequate, whether to approve Class Counsel's application for attorneys' fees and expenses, and whether to enter the Final Approval Order and Judgment giving effect to this Agreement.

(p)     **"Final Approval Order and Judgment"** means the stipulated final judgment, upon entry by the Court in the form attached as Exhibit F to this Agreement without any modification prejudicial to the rights of any of the Parties to this Agreement.

(q)     **"Final Settlement Approval"** means the date on which the Final Approval Order and Judgment becomes final for purposes of this Agreement:

(i)  if no appeal has been taken from the Final Approval Order and Judgment, Final Settlement Approval means the date on which the time to appeal therefrom has expired without any appeal being taken therefrom; or

(ii)  if any appeal has been taken from the Final Approval Order and Judgment, Final Settlement Approval means the date on which all appeals therefrom, including petitions for rehearing or re-argument, petitions for rehearing, rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Approval Order and Judgment without any modification that would prejudice the rights of any of the Parties as any of them determine in their sole discretion.

(r)  **"Household"** means one or more persons who occupy residential property including a house, an apartment, a mobile home, a group of rooms, or a single room that is occupied (or if vacant, is intended for occupancy) as separate living quarters. Separate living quarters are those in which the occupants live and eat separately from any other persons in the building and which have direct access from the outside of the building or through a common hall.  The occupants may be a single family, one person living alone, two or more families living together, or any other group of related or unrelated persons who share living arrangements at a given time.

(s)  **"Middle Point Landfill"** means the landfill located at 750 E. Jefferson Pike in Murfreesboro, Tennessee.

(t)  **"Notice Expenses"** means the reasonable costs and expenses to third parties associated with the preparation and dissemination of Class Notice, and any third-party costs associated with soliciting Claim Forms and processing Claim Forms.

(u)  "**Notice of Proposed Class Action Settlement**" means the notice to be provided to the appropriate Federal and State officials as required by the Class Action Fairness Act pursuant to Section 7.6 of this Agreement, in a form similar to Exhibit E attached to this Agreement.

(v)     **"Opt-Out" or "Opted-Out"** shall mean a Class Member's exclusion from the Class, completed by submitting a notice of his/her/their/its request for exclusion from the Class within the time set forth in the Class Notice attached as Exhibit B.  Opt-Outs are made and determined on a Household basis, meaning an entire Household is deemed to have Opted-Out if any person in a given Household Opts-Out.

(w)     **"Odor Control Measures"** means the actions undertaken or to be undertaken by Defendant pursuant to Section 6 of this Agreement.

(x)     **"Party"** means either Plaintiffs or Defendant.

(y)     **"Parties"** means Plaintiffs and Defendant.

(z)     **"Person" or "Persons"** means natural human being(s) regarded as an individual or individuals.

(aa)    **"Plaintiff"** means Justin Burriss who filed this Action on behalf of himself and the Class.

(bb)    **"Plaintiffs"** mean Plaintiff and the Class.

(cc)    **"Preliminary Approval Order"** means the order to be entered by the Court concerning the preliminary approval of this Agreement, Class Notice, and the Fairness Hearing, as contemplated in Section 7 of this Agreement and in a form similar to Exhibit A attached to this Agreement.

(dd)    **"Publication Notice"** means the short-form notice attached as Exhibit C, to be published in a newspaper of general circulation in the relevant geographic area.

(ee)    **"Released Claims"** means any manner of civil or administrative actions, causes of actions, suits, obligations, claims, debts, demands, agreements, promises, liabilities, controversies, costs, expenses, and attorneys' fees whatsoever, whether in law or in equity and whether based on any federal law, state law, common law or foreign law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued which the Class Members or any of them, ever had, now have, or can have, or shall or may hereafter have, concerning the Middle Point Landfill either individually, or as a member of a class, against the Released Parties, for, based on, by reason of, or arising from the conduct

8

alleged in Plaintiff's Class Action Complaint and Jury Demand filed in this Action, except that nothing here releases any claim arising out of the violation of breach of this Agreement. The release shall not bar claims for medical harm or personal injuries, and shall not bar claims of any kind arising from any emissions occurring after Final Settlement Approval. The Settlement Class shall be bound by a covenant not to sue Released Parties over Released Claims.

(ff) "**Released Parties**" means Defendant and all of its past, present and future parent, subsidiary and affiliated corporations, including ultimate parent corporations, and other related business entities, all of its predecessors, successors and assigns, and all of its employees, contractors, officers, directors, shareholders, members, partners, insurers, accountants, agents, attorneys and representatives.

(gg) "**Settlement**" means the resolution of the Action by amicable agreement of the Parties on the terms and conditions provided in this Agreement, subject to approval of the Court.

(hh) "**Settlement Funds**" means the amount paid by Defendant pursuant to Section 6 of this Agreement.

5.2 All other capitalized terms used in this Agreement shall have the meaning ascribed to them herein.

6.     **Settlement Funds Distribution and Odor Control Measures**

6.1 Defendant will: i) pay the sum of $995,000 in cash, minus any reduction for Opt-Outs (the "Settlement Funds"); and ii) provide the Odor Control Measures to settle all Released Claims in the Action.

6.2 Defendant will pay the Settlement Funds into the Escrow Account no later than ten (10) business days after Final Settlement Approval. Defendant may pay the Settlement Funds into the Escrow Account after the Court issues its Final Approval Order and Judgment and prior to the Final Settlement Approval, but the Settlement Funds shall not be allocated or distributed prior to Final Settlement Approval. Any Settlement Funds paid into the Escrow Account in advance of Final Settlement Approval shall be returned if Final Settlement Approval does not occur. Defendant has no obligation under any circumstances to pay any of the Settlement Funds

9

prior to Final Settlement Approval, and Defendant has no such obligation in the event Defendant exercises its option to terminate this Agreement pursuant to Section 13 below.

6.3     The Settlement Funds shall be distributed and administered only as provided in this Agreement. No person or entity participating in administration or distribution of the funds shall be liable for any acts or omissions in connection with that participation, except for gross negligence, willful misconduct, or breach of fiduciary duty (to the extent that any fiduciary duty exists).

6.4     Notwithstanding any provision of this Agreement, Defendant's Counsel, Defendant and Defendant's representatives, insurers and other agents shall not bear any responsibility for the administration or distribution of the Settlement Funds, unless and except as expressly provided in this Agreement, if at all.

6.5     In the event that this Agreement is terminated pursuant to Section 13 below, then any of the Settlement Funds which have been paid by Defendant shall be returned to Defendant within 30 days of termination. If such funds are not returned within such 30-day period, interest will accrue thereon at the rate for 30-day U.S. Government interest bearing instruments from the date of the deposit into the Escrow Account until the date the money is returned to Defendant.

6.6     All Notice Expenses and Costs of Administration shall be advanced by Class Counsel, subject to reimbursement from the Settlement Funds as provided herein.

6.7     The Settlement Funds shall be allocated and distributed within thirty (30) days after Final Settlement Approval as follows:

(a)     Not more than $30,000 shall be paid to Class Counsel to reimburse them for their out-of-pocket costs incurred in litigating this Action (including the costs of Settlement administration), subject to review and approval by the Court;

(b)     Not more than one-third of the total Settlement value, net of costs, shall be paid to Class Counsel as fees allowed by the Court for their efforts on behalf of the Class, subject to review and approval by the Court;

(c)     Not more than $5,000 shall be paid to Justin Burriss for his efforts on behalf of the Class, in addition to his class member payment(s); and

(d)     The remainder of the Settlement Funds shall be divided equally on a per-Household basis among all Households with one or more persons who: (1) qualify as part of the Settlement Class; (2) owned or occupied property within the class area, at any time since March 11, 2018; and (3) submit a completed Claim Form within 30 days of the mailing of the Class Notice of the proposed Settlement to the Settlement Class. Households with more than one person qualifying for the Settlement Class will only receive a single payment. Should multiple such persons claim, Class Counsel will attempt to reach the claimants to determine whether they would prefer to have their shares split and paid separately or paid to a single claimant, with the default being to split the shares. No person may make claims for multiple Households, and if such claims are received only the first to be received will be approved.

6.8     If the Opt-Out threshold is exceeded, as described in Section 13, and Defendant chooses not to terminate this Agreement, then Defendant is entitled to a dollar-for-dollar reduction from its $995,000 payment equal to the amount any Household that Opts-Out (by having any person who lives there Opt-Out) would otherwise have been entitled to receive. Any Opt-Outs and corresponding reduction(s) shall be determined and calculated prior the Fairness Hearing and incorporated into the Final Approval Order and Judgment entered by the Court. Defendant's subsequent payment into the Escrow Account shall be reduced by the Opt-Out reduction.

6.9     To mitigate the effect of any potential odors associated with the operation of Middle Point Landfill and hence for the general welfare and benefit of the Settlement Class, Defendant will implement these capital and operational improvements and facility changes to the Middle Point Landfill over the next four (4) years:

(a)     Odor Control Measures: Defendant shall expend at least $1.75 million over the next four (4) years for the purposes of mitigating and preventing potential odors (the "Odor Control Measures") following Final Settlement Approval. Defendant may, but has no obligation to, undertake some of the Odor Control Measures pending Final Settlement Approval. The character and amount of the Odor Control Measures taken each year shall be at Defendant's sole discretion. The Odor Control Measures may include, without limitation, drilling new vertical or

horizontal gas extraction wells, pipes, flares, pumps or other gas control equipment, or installing and operating an odor control neutralizing and masking system.

(b) Reporting Obligation: Defendant shall provide to Liddle Sheets Coulson P.C. a list of the Odor Control Measures and their cost by January 31st of each calendar year following Final Settlement Approval until at least $1.75 million has been spent. This report will include a description by category of the particular Odor Control Measures and the associated dollar amount for each category.

(c) Termination of Injunctive Relief: The injunctive relief shall terminate when Defendant reports to Liddle Sheets Coulson P.C., at any time that it has spent at least $1.75 million on Odor Control Measures following Final Settlement Approval.

6.10 Defendant has no obligation to provide any of the Odor Control Measures at any time if either Defendant or Plaintiffs exercise their options to terminate this Settlement and Release Agreement upon the occurrence of certain events specified in Section 13 below.

6.11 In the event this Settlement is completed, a Final Approval Order and Judgment is entered and this Agreement is not terminated by either Party, and at a later date Plaintiff or a Class Member alleges that Defendant has not performed its Odor Control Measures obligation under this Agreement, then and only then, Plaintiff or a Class Member may bring an action to enforce Defendant's Odor Control Measures obligation without violating this Agreement, if such action is solely and exclusively for the purpose of seeking an injunction to require Defendant to perform its Odor Control Measures obligation under this Agreement, otherwise all actions are permanently barred as provided for under Section 10 below. Such an action seeking an injunction to require Defendant to perform its Odor Control Measures obligation shall be Plaintiff's and each Class Member's sole remedy regarding the Odor Control Measures.

7. **Notice of Settlement and Fairness Hearing**

7.1 As soon as practicable after execution of this Agreement, Class Counsel and Defendant's Counsel shall jointly move the Court for preliminary approval of the Settlement and entry of the Preliminary Approval Order, substantially in the form attached as Exhibit A, approval of the dissemination of the Class Notice, in a form similar to the attached Exhibit B,

and approval of the dissemination of the Publication Notice, in a form similar to the attached Exhibit C.

7.2     This agreement is confidential until the Court enters the Preliminary Approval Order. Nothing in this confidentiality provision prevents the Parties from confirming the fact that the case is conditionally settled subject to documentation and Court approval.

7.3     The Class Notice includes the general terms of this Agreement, the date of the Fairness Hearing, information on how to Opt-Out of the Class, and how to execute the Claim Form in a form similar to Exhibit D. Within twenty-one (21) days after the Court issues its Preliminary Approval Order, Class Counsel will disseminate the Class Notice and Claim Form to each Class Member whose address is reasonably ascertainable by first class mail, postage prepaid to each such person at such address(es), and Class Counsel will post on the website (www.lsccounsel.com/MiddlePointLandfill) the Class Notice, along with copies of this Agreement and the Claim Form. The Publication Notice is a summary version of the Class Notice that will direct Class Members to the website for further information.

7.4     If it chooses at its sole discretion, Class Counsel may retain one or more Administrators to help implement the terms of the Agreement. The Administrator(s) may assist with various administrative tasks, including, without limitation, the mailing or arranging for the mailing of the Class Notice and Claim Form, and publication of the Class Notice.

7.5     The Parties shall issue an agreed joint press release upon entry of the Preliminary Approval Order, and shall make no other public statements regarding the terms of the Settlement that are inconsistent with the press release. Plaintiffs' counsel shall not attribute any particular monetary value to the injunctive relief except to the extent this Agreement itself includes a monetary minimum on mitigation measure expenditures.

7.6     Not later than ten (10) days after the Court issues its Preliminary Approval Order, Defendant will provide notice to the appropriate Federal and State officials as required by the Class Action Fairness Act. The Notice of Proposed Class Action Settlement to be provided is attached (without exhibits) as Exhibit E. The Parties agree that this notice constitutes the best

13

notice practicable under the circumstances, and fully complies with the provisions set forth in the Class Action Fairness Act, 28 U.S.C. § 1715 and any other applicable law.

7.7     After the Class Notice is given, the Court will hold a Fairness Hearing and the Parties will seek the Court's final approval of this Agreement. If this Agreement is approved by the Court, Plaintiffs shall move the Court for entry of the Final Approval Order and Judgment, in a form similar to the attached Exhibit F.

7.8     At the Fairness Hearing, Class Counsel will seek the Court's approval of an award of its attorneys' fees, expenses, and costs to be deducted by Class Counsel from the Settlement Funds. Defendant will take no position as to Class Counsel's motion or application for an award of reasonable attorneys' fees, expenses and costs, assuming it is consistent with this Agreement. Defendant may respond to inquiries from the Court.

7.9     All Notice Expenses and Costs of Administration shall be advanced by Class Counsel, subject to reimbursement from the Settlement Funds. Except as expressly provided in this Agreement, Defendant shall not be liable for any fees, costs or expenses whatsoever of Plaintiff, the Class or any Class Member, in connection with the Action or this Agreement.

## 8.     **Assume No Tax Liability**

8.1     No opinion concerning the tax consequences of the Settlement have been given or will be given by Defendant, Defendant's Counsel, Plaintiff or Class Counsel to Plaintiff or any Class Member nor are any representations in this regard made or any warranties made by virtue of this Agreement. The Class Notice shall direct Class Members to consult their own tax advisors regarding the federal, state, local or other tax consequences of the Settlement. Plaintiff and each Class Member's tax obligations (including assessments, penalties, interest or payments that arise or may arise as a result of the Settlement, and the determination thereof) are the sole responsibility of Plaintiff and each Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each Class Member.

## 9.     **Lien Warranty, Indemnification, and Satisfaction**

9.1     The Parties have agreed to the release of all Released Claims as set forth in this Agreement.  Neither Plaintiff nor the Settlement Class have asserted any personal injury claims

in this Action. Presently, the Parties are unaware of any member of the Settlement Class who has received medical treatment necessitated by any disease or medical condition allegedly caused by Middle Point Landfill which may give rise to a lien for the healthcare provided. Each claiming Class Member warrants and represents to Defendant that, as of the date of the Final Approval Order and Judgment, he or she has not been diagnosed with, is not aware of, and does not have any symptoms that he or she suspects could be associated with any sickness, disease or physical injury which may have been caused by the action or inaction of Defendant; and that he or she has not received benefits under Medicare or any other federal or state governmental program for any such sickness, disease or injury; and that he or she will defend and indemnify Defendant against any lien claims by any party, including Medicare or any other governmental program, seeking repayment of such benefit.

9.2     It is agreed that, in the unlikely event that any reimbursement is due to Medicare or any Centers for Medicare & Medicaid Services ("CMS") entity, the same shall be paid from the proceeds of the Settlement Funds for the Class Member who has filed a valid Claim Form and who is the subject of any action for reimbursement by Medicare or any CMS entity or, once paid, by the Class Member, and in no event will Defendant be obligated to make or reimburse such payments.

10.     **Release And Waiver**

10.1     From and after entry of the Final Approval Order and Judgment, each Class Member, on behalf of themselves and their heirs, executors, administrators, personal representatives, beneficiaries, predecessors, successors, assigns and each of them, and any of their former and present accountants, agents, attorneys, representatives associates, entities, businesses and affiliates, shall and hereby does forever and fully release and discharge the Released Parties from the Released Claims.

10.2     All members of the Settlement Class agree to the Cooling Off Period, in which all members of the Settlement Class shall covenant not to sue Defendant on any alleged claims for odor, dust or other alleged emissions that occurred after the Final Settlement Approval for a

period of thirty months after Final Settlement Approval, though claims may accrue during that time.

10.3    The release shall be effective and binding on Plaintiff, the Class and each Class Member upon entry of the Final Approval Order and Judgment without any further action of the Parties required.

## 11.    Limitation On Use Of This Agreement

11.1    Under no circumstances, shall this Agreement or drafts thereof, whether or not executed or consummated, nor any of its terms and provisions or exhibits, nor any of the negotiations or proceedings connected with it, be:

(a)    Construed as an admission of any sort whatsoever, either by Defendant or Plaintiffs, relating to any issue, fact, claim or defense in this Action;

(b)    Offered or received into evidence in the Action in the event that either Party exercises their option to terminate this Agreement pursuant to Section 13 or in any other action or proceeding of any nature, including administrative or regulatory proceedings, for any purpose whatsoever except to the extent necessary to respond to or defend against any claim arising from any alleged act or omission in connection with participation in this Action;

(c)    Referred to for any reason in any writing or document other than to give effect to the provision of this Agreement except as otherwise provided for in this Agreement; or

(d)    Afforded res judicata, issue preclusion or collateral estoppel effect as to any factual or legal issue.

## 12.    Completion of Claim Form

12.1    To be eligible for money from the Settlement Fund, a Class Member must submit his, her or its claim and participate in the Settlement by executing the Claim Form in a form similar to Exhibit D attached to this Agreement.

12.2    A Class Member must send the fully completed Claim Form to Liddle Sheets Coulson P.C., 975 E. Jefferson Avenue, Detroit, Michigan 48207-3101 by first class mail, postmarked no later than within 30 days of the mailing of the Class Notice.

12.3    Class Counsel shall use their best efforts to obtain either a Claim Form or an Opt-Out notice from each Class Member.

12.4    A Class Member who submits a Claim Form but lives in the same Household as a Class Member that has Opted-Out, will not be eligible for money from the Settlement Fund because Opt-Outs are made and determined on a Household basis.

### 13.    <u>**Termination of This Agreement**</u>

13.1    This Agreement shall terminate at the sole option and discretion of either the Settlement Class (through Class Counsel) or Defendant if: (i) the Court, or any appellate court(s), rejects, modifies or denies approval of any portion of this Agreement, the Settlement or the Final Approval Order and Judgment that is material, including, without limitation, the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class and/or the terms of the Released Claims, or (ii) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Approval Order and Judgment that either Party in its sole judgment and discretion believes is material. A Party must exercise the option to withdraw from and terminate this Agreement, as set forth in this Section 13, no later than seven (7) days after receiving notice of the event prompting the decision to terminate. Notwithstanding, nothing herein shall be construed to permit the Settlement Class to terminate this Agreement solely because of the amount of the reasonable attorneys' fees and costs awarded by the Court or any appellate court(s).

13.2    Defendant has the unilateral option to void the Settlement if more than five percent (5%) or more than twenty-five (25) Households of the Settlement Class Opt-Out. In such event, Defendant may elect to terminate this Agreement by so notifying Class Counsel and the Court in writing not less than seven (7) days prior to the date set for the Fairness Hearing.

13.3    If an option to withdraw from and terminate this Agreement arises under this Section 13, neither Defendant nor Plaintiffs are required for any reason or under any circumstance to exercise that option, and any exercise of such an option shall be made in good faith.

13.4    If this Agreement is terminated pursuant to this Section 13 by either Party, then:

(a)     This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of Sections 2, 5, 14, and this Section 13;

(b)     This Agreement and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of Defendant, Plaintiff, or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

(c)     Defendant expressly reserves all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action, including (without limitation) the argument that the Action may not be litigated as a class action; and

(d)     Plaintiffs expressly reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Action, including (without limitation) any argument concerning class certification.

## 14.     **General Matters and Reservations**

14.1     By execution of this Agreement, Defendant does not intend to release any claim they have against any insurer for any payment, fee, cost or expense whatsoever hereunder, including attorneys' fees and costs.

14.2     Class Counsel represents (i) that it is authorized to enter into this Agreement on behalf of Plaintiff, and (ii) that Class Counsel is seeking to protect the interests of the Class.

14.3     This Agreement sets forth the entire agreement among the Parties with respect to its subject matter, and it may not be altered or modified in any manner except by written instrument executed by Class Counsel and Defendant's Counsel. The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them.

14.4     Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by email and first-class mail as follows:

If to Defendant, then to:

William G. Beck

Allyson E. Cunningham
Lathrop GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
william.beck@lathropgpm.com
allyson.cunningham@lathropgpm.com

Kayla A. Brewe
Lathrop GPM LLP
7701 Forsyth Boulevard, Suite 500
Clayton, Missouri 63105
kayla.brewe@lathropgpm.com

Wells Trompeter
Waller Lansden Dortch & Davis, LLP
511 Union Street
Suite 2700
Nashville, TN 37219
wells.trompeter@wallerlaw.com

If to Plaintiffs, then to:

Steven D. Liddle
Nicholas A. Coulson
Albert J. Asciutto
LIDDLE SHEETS COULSON P.C.
975 E. Jefferson Avenue
Detroit, MI 48207
sliddle@lsccounsel.com
ncoulson@lsccounsel.com
aasciutto@lsccounsel.com

14.5     The Parties agree that this Agreement is clear and unambiguous and was drafted jointly by both counsel for the Parties at arm's length, and that no parole or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

14.6     The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

14.7     The Parties, Defendant's Counsel, and Class Counsel agree that they will not make public in any way the existence and the contents of this Agreement or the proposed Final

Approval Order and Judgment and all related negotiations until the date on which the Final

Approval Order and Judgment is entered; provided however, that this Section 14 shall not

prevent the disclosure, prior to the date on which the Final Approval Order and Judgment is

entered, of information concerning the Settlement, this Agreement or any related negotiations,

(i) to regulators, financial analysts, and/or employees of Defendant, where Defendant deems

such disclosure necessary to effectuate the terms and conditions of this Agreement; (ii) to Class

Members and the public generally as required by the Court to effectuate the Class Notice

provisions of this Agreement and/or to effectuate any, if at all, ethical obligations to the Class;

and (iii) to any other person or entity (such as experts, courts, and/or Administrators) to which

the Parties both agree in writing disclosure must be made in order to effectuate the terms and

conditions of this Agreement. Nothing in this confidentiality provision prevents the Parties from

confirming the fact that the case is conditionally settled subject to documentation and Court

approval.

14.8    The Parties and their attorneys agree to cooperate fully with one another in

seeking Court approval of this Agreement and to use their best efforts to consummate the terms

of this Agreement. Neither Plaintiffs nor Defendant shall seek to evade their good faith

obligations to seek approval and implementation of this Agreement by virtue of any rulings,

orders, governmental report, or other development, whether in the Action or in any other

litigation, or otherwise that might hereinafter occur and might be deemed to alter the relative

strength of the Plaintiffs or Defendant with respect to any claim or defense or their relative

bargaining power with respect to negotiating this Agreement.

14.9    The waiver by one Party of any breach of this Agreement by another Party shall

not be deemed a waiver of any other prior or subsequent breach of this Agreement.

14.10   This Agreement shall be construed in accordance with the laws of the United

States District Court for the Middle District of Tennessee.

14.11   If this Agreement is terminated for any reason or if the Court declines to enter a Final Approval Order and Judgment or the Court enters a Final Approval Order and Judgment which is vacated, modified or reversed for any reason, upon appeal or otherwise, unless such modifications are agreed to by the Parties in writing, or if Final Settlement Approval does not otherwise occur, the Action shall thereupon revert forthwith to its status as of the date and time immediately prior to the execution of this Agreement, and Plaintiffs and Defendant shall proceed in all respects as if this Agreement had not been executed and any related orders had not been entered. In that event, this Agreement, the Settlement and any of the Parties' discussions with respect thereto shall be null and void and without further force and effect, and shall not be used or referred to for any purpose whatsoever in the Action, in any other litigation, or otherwise. The Parties agree that this Subsection 14.11 is intended in all respects to operate as though Settlement negotiations, discovery during Settlement negotiations and this Agreement never existed and that all claims and defenses shall be available to the Parties to assert.

14.12   This Agreement may be signed in counterparts transmitted by email.

14.13   Plaintiff and Defendant agree that they will not, on behalf of themselves, or in cooperation or participation with any other person, firm, entity, corporation or governmental agency, file, re-file or in any manner voluntarily participate in any way in the prosecution of any claim, charge, grievance, complaint or action of any sort against each other before any local, state or federal court, arbitrator, administrative agency, board or tribunal concerning any matter which was or could have been raised in connection with the Released Claims, the Action or the Complaint.

14.14   To further the interests of the Parties, each Party warrants that no assignment of any claim, cause of action, demand, or charge against the other Party hereto has been or will be made.

14.15   This Agreement is binding on and inures to the benefit of Plaintiffs and Defendant and their respective heirs, executors, administrators, successors, and assigns of the Parties hereto.

14.16   Defendant and its direct and indirect parent and subsidiary companies and affiliates shall have no other obligations not set forth in this Agreement to provide any injunctive relief, any damages relief, or any Class Counsel fees and expenses.

14.17   This Agreement may be amended only by a written agreement executed by all of the Parties.

14.18   The Parties to this Agreement acknowledge that they have been advised by their own independently selected counsel and other advisors in connection with this Agreement and enter into this Agreement solely on the basis of that advice and on the basis of their own independent investigation of the facts, laws, and circumstances material to this Agreement or any provision thereof, and not in any manner or to any degree based upon any statement or omission by the other Party or its agents, representatives, or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise.

THIS AGREEMENT has been executed the 21st day of October 2021.

*Justin Burriss*
E76EBF538BBD4F4...
JUSTIN BURRISS


BFI WASTE SYSTEMS OF TENNESSEE, LLC, d/b/a "MIDDLE POINT LANDFILL"

By: _____

_____
Printed Name

Its: _____
Title

14.15   This Agreement is binding on and inures to the benefit of Plaintiffs and Defendant and their respective heirs, executors, administrators, successors, and assigns of the Parties hereto.

14.16   Defendant and its direct and indirect parent and subsidiary companies and affiliates shall have no other obligations not set forth in this Agreement to provide any injunctive relief, any damages relief, or any Class Counsel fees and expenses.

14.17   This Agreement may be amended only by a written agreement executed by all of the Parties.

14.18   The Parties to this Agreement acknowledge that they have been advised by their own independently selected counsel and other advisors in connection with this Agreement and enter into this Agreement solely on the basis of that advice and on the basis of their own independent investigation of the facts, laws, and circumstances material to this Agreement or any provision thereof, and not in any manner or to any degree based upon any statement or omission by the other Party or its agents, representatives, or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise.

THIS AGREEMENT has been executed the 21st day of October 2021.

_____
JUSTIN BURRISS


BFI WASTE SYSTEMS OF TENNESSEE, LLC, d/b/a "MIDDLE POINT LANDFILL"

By: _____

John B. Nickerson
_____
Printed Name

Its: _____
Vice President
Title

DocuSign Envelope ID: 276FF167-43B0-48E5-B0B0-E30896B422BB

Dated:  October 21, 2021

By: /s/ Nicholas A. Coulson
    Steven D. Liddle
    Nicholas A. Coulson
    Albert J. Asciutto
    LIDDLE SHEETS COULSON P.C.
    *Pro Hac Vice*
    975 E. Jefferson Avenue
    Detroit, MI 48207
    (313) 392-0015
    sliddle@lsccounsel.com
    ncoulson@lsccounsel.com
    aasciutto@lsccounsel.com

    Thomas R. Greer
    Bailey & Greer PLLC
    6256 Poplar Ave.
    Memphis, TN 38119
    tgreer@baileygreer.com

    William Michael Kilgore
    Matt Hardin Law, PLLC
    207 23rd Avenue North
    Nashville, TN 37203
    michael@matthardinlaw.com

    ATTORNEYS FOR PLAINTIFFS

By: /s/ Wells Trompeter
    Wells Trompeter (TN BPR # 030380)
    Waller Lansden Dortch & Davis, LLP
    511 Union Street
    Suite 2700
    Nashville, TN 37219
    (615) 850-8759
    wells.trompeter@wallerlaw.com

    William G. Beck (*pro hac vice*)
    Allyson E. Cunningham (*pro hac vice*)
    Lathrop GPM LLP
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri 64108-2618
    (816) 292-2000
    william.beck@lathropgpm.com
    allyson.cunningham@lathropgpm.com

    Kayla A. Brewe (*pro hac vice*)
    Lathrop GPM LLP
    7701 Forsyth Boulevard, Suite 500
    Clayton, Missouri 63105
    (314) 613-2800
    kayla.brewe@lathropgpm.com

    ATTORNEYS FOR DEFENDANT BFI WASTE
    SYSTEMS OF TENNESSEE, LLC, D/B/A
    "MIDDLE POINT LANDFILL"